IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09CR298-1 |
| | ) | |
| BRIAN JERMAINE SMITH | ) | |

**MEMORANDUM ORDER**

This matter is before the Court on Defendant Brian Jermaine Smith's pro se Motion for Reconsideration of Compassionate Relief [Doc. #67]. His initial motion was denied for failure to exhaust administrative remedies, but Smith now presents evidence of exhaustion and requests appointment of counsel to assist with his motion for compassionate release. In his initial motion which provides the substance of Smith's request, he was concerned about the lasting implications of having contracted COVID-19 and contracting it a second time in light of the circumstances at USP Leavenworth where he is housed. For the reasons explained below, his motion is denied.

As an initial matter, the Sixth Amendment right to counsel does not extend beyond the first appeal of right. Pennsylvania v. Finley, 481 U.S. 551, 555 (1987). In exceptional circumstances, due process may require appointment of counsel in certain postconviction proceedings, but Smith's motion for compassionate release is not among those. See United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000) (denying appointment of counsel for § 3582(c) motion to reduce sentence). Cf. 18 U.S.C. § 3006A(a)(2)(B) (authorizing the court to provide

counsel to a financially eligible person seeking relief under 28 U.S.C. §§ 2241, 2254, or 2255 when "the interests of justice so require"). Accordingly, his request for appointment of counsel is denied.

As explained in the previous order, on October 8, 2010, Smith was sentenced to 176 months' imprisonment to run consecutively to the state sentence he was then serving. Title 18 U.S.C. § 3582(c)(1)(A) authorizes the court to modify a sentence under certain circumstances "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier". Smith submitted a request for compassionate release which the warden denied on August 24, 2020 after which Smith pursued administrative appeals. It matters not that the date of Smith's submission is not noted, because it is apparent from the warden's denial that well more than thirty days had lapsed since the warden's receipt of Smith's request when he sought relief from the court.

Smith must next show that extraordinary and compelling reasons warrant relief, see 18 U.S.C. § 3582(c)(1)(A)(i), and this he has not done. He claims to have contracted COVID-19 requiring "a hard fought scary battle" and fears the long-term consequences of the virus. He contends that his previous diagnosis of COVID-19 "can and will substantially diminish[] [his] ability . . . to provide self care within . . . the correctional facility from which he may not be expected to recover if

2

he contracts [it] a second time."  Yet, Smith provides no further information about this "battle", his symptoms, or his resulting medical condition[1].

He is concerned that contracting the virus a second time at his age (forty-seven) "will most likely be severe" and "could strictly be a death sentence." However, while he identifies the Centers of Disease Control and Prevention ("CDC") as the source for that claim, he does not provide supporting information from the CDC.[2]  Instead, according to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last updated Oct. 27, 2020).  On October 20, 2020, the Director of the NIH described the results of two recent studies published in the journal Science Immunology whose "findings show that people who survive COVID-19 infection continue to produce protective antibodies against key parts of the virus for at least three to four months after developing their first symptoms" although "some other antibody types decline more quickly." Dr. Francis Collins, NIH Director's Blog, <u>Two Studies Show COVID-19 Antibodies Persist for Months</u> (Oct. 20, 2020), https://directorsblog.nih.gov/2020/10/20/two-studies-show-covid-19-antibodies-persist-for-months/.  "While longer-term study is needed, the findings

---

[1] Smith does not claim to have any medical condition identified by the Centers for Disease Control and Prevention as increasing his risk of severe illness from the virus that causes COVID-19.

[2] More specifically, Smith states, "With no type of <u>vaccine treatment</u>, the CDC has said that if a person (especially in Mr. Smith's ethnic group) . . . contract[s] the deadly virus a second time, [it] will most likely be very severe."  It is worth noting that since Smith filed his motion, two vaccines have been approved and are in the process of being distributed.

lend support to evidence that protective antibody responses against the novel virus do persist." Id.  As recently as December 8, Dr. Collins described "[n]ew findings from a study of thousands of healthcare workers in England [that] show that those who got COVID-19 and produced antibodies against the virus are highly unlikely to become infected again, at least over the several months that the study was conducted." Dr. Francis Collins, NIH Director's Blog, Study of Healthcare Workers Shows COVID-19 Immunity Lasts Many Months (Dec. 8, 2020), https://directorsblog.nih.gov/2020/12/08/study-of-healthcare-workers-shows-covid-19-immunity-lasts-many-months/ (discussing a study in which researchers from the University of Oxford, England studied more than 12,000 healthcare workers at Oxford University Hospitals from April to November 2020).  "In the rare instances in which someone with acquired immunity for SARS-CoV-2 subsequently tested positive for the virus within a six month period, they never showed any signs of being ill." Id.  Smith does not identify when he was infected with COVID-19, but at least for a period of time, he may have had some protection from reinfection and, were he to be one of the rare cases of reinfection, he may not show any signs.

Nevertheless, he claims to be "particularly at high risk of catching COVID-19 again" because of his incarceration at USP Leavenworth where the number of inmates and staff members testing positive "is getting worse by the day."  Smith lives in a three-tier unit that houses 360 inmates where the showers, phones, and computers "are sometimes not being cleaned at all".  Inmates have been issued three masks, but no gloves.  A few guards refuse to wear a mask.  He claims there

4

Case 1:09-cr-00298-NCT   Document 68   Filed 12/21/20   Page 4 of 6

are no cleaning supplies, no social distancing, and no quarantine of positive inmates. And, he is concerned about the movement of inmates and workers outside of and within the prison. USP Leavenworth, with its 1,524 inmates, has a significant history of inmate infection; as of December 18, 2020, 549 inmates and five staff members have recovered from COVID-19. https://www.bop.gov/locations/institutions/lvn/; https://www.bop.gov/coronavirus/. However, presently, only five inmates and five staff members are infected, and no one has died. https://www.bop.gov/coronavirus/. These figures suggest that the facility is doing a better job of preventing the spread of the virus now than in the past. Furthermore, Smith does not identify a release plan, but his presentence reported noted that he had resided in North Carolina since December 2007. (Presentence Report ¶ 51.) It cannot be determined that Smith would be better protected from the virus were he to be released. See generally COVID-19 County Alert System, N.C. Dep't of Health & Human Servs., https://files.nc.gov/covid/documents/dashboard/COVID-19-County-Alert-System-Report.pdf.

  In further support of his motion, Smith relies on his rehabilitation efforts. He is enrolled in Life Connections Program which he describes as a rehabilitative religious program to prepare for reentry. He claims to have completed numerous programs, to have served as a mentor for troubled inmates at FCI Berlin, to have only one infraction during his incarceration, and never to have tested positive for drugs or alcohol. These are commendable efforts and achievements, but they do

5

Case 1:09-cr-00298-NCT   Document 68   Filed 12/21/20   Page 5 of 6

not constitute extraordinary and compelling reasons alone or combined with the other reasons Smith advances in support of his motion.

For the reasons explained above, IT IS HEREBY ORDERED that Defendant Brian Jermaine Smith's pro se Motion for Reconsideration of Compassionate Relief [Doc. #67] is DENIED.

This the 21st day of December, 2020.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge